**FILED**

**NOV 0 9 2012**

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CLERK

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| JAMES R. NICHOLS; | * | CIV 11-4016 |
| JOHN F. ROBERTSON; and | * | |
| CURTIS DUMAS, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| | * | MEMORANDUM OPINION AND |
| vs. | * | ORDER RE: MOTION |
| | * | FOR SUMMARY JUDGMENT |
| CITY OF MITCHELL, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs James R. Nichols, John F. Robertson and Curtis Dumas brought separate actions against Defendant City of Mitchell claiming employment discrimination in violation of the Americans With Disabilities Act (ADA).[1] The cases were then consolidated for discovery and trial. The Defendant City of Mitchell moved for summary judgment. Doc. 42. After the motion for summary judgment was filed, the Court allowed Defendant to amend its answers, allowed additional discovery and allowed supplemental briefing on the Defendant's motion for summary judgment. The Court also gave notice pursuant to Fed. R. Civ. P. 56(f) that it was considering granting summary judgment to the Plaintiffs on liability for the violation of 42 U.S.C. § 12112(d)(4)(A).

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant City of Mitchell provides transit services through Palace Transit, a program that is partially funded with federal, state and city funds. Plaintiff James Nichols began working for

---

[1]Although age discrimination was alleged in the individual complaints, none of the Plaintiffs filed a claim with the Equal Employment Opportunity Commission alleging they had been discriminated against by the City based upon their age. There was no resistance to summary judgment for the age discrimination claims and after the first hearing on the motion for summary judgment the Court entered summary judgment against the Plaintiffs on their age discrimination claims. Doc. 85.

Palace Transit as a bus driver in March 2003. Plaintiff John Robertson began working for Palace Transit as a bus driver in 2005. Plaintiff Curtis Dumas began working for Palace Transit as a bus driver in 2007. Defendant City of Mitchell adopted a policy on or about January 5, 2009, which required its Palace Transit bus drivers to pass the Department of Transportation's (DOT) CDL Medical Certification examination that utilizes the Federal Motor Carrier Safety Regulations. The DOT examination is required by federal statute for interstate truck drivers. Palace Transit is an "on demand" service, where the customers request a ride, and generally the services are provided in the City of Mitchell. The first documented out-of-state trip was not had until 2011, after Plaintiffs' employment had been terminated. Most of the buses seat fifteen or fewer passengers.

Defendants concede that to drive an intrastate passenger bus South Dakota law merely requires a driver to hold a valid South Dakota CDL (Commercial Driver's License), the obtaining of which only involves a minimal vision test, and a written test. The job description for bus operator for Palace Transit which was in effect when the plaintiffs were hired lists CDL "p" endorsement as the required certificate or license for the position. The Defendant previously required a post-offer physical exam which included  a vision test, drug test, blood pressure test and a determination whether the applicant could safely perform the physical requirements listed in the job description. This exam was not as specific as the DOT exam and could be administered by the employee's physician. All of the Plaintiffs had passed the post-offer physical exam under the previous policy. Each of their post-offer physical summary reports for examinations under the previous policy contained a check mark before the provision: "NO medical contraindications were noted in the medical and occupational history review or in the physical exam that would interfere with performing the essential functions of the job."

The DOT exam protocol specifies what physical to give, what medical records to obtain, and what medical conditions to consider. The DOT exam protocol has required follow-up examinations and requires the employee to report certain medical conditions and requires follow-up if certain medical conditions change after an employee has passed the exam.

In 2009, each Plaintiff underwent the DOT examination required by the City of Mitchell's policy. Plaintiffs Nichols and Robertson did not pass the examination. Plaintiff Dumas obtained a one-year certification, and was required to undergo the examination again in March of 2010. On

January 21, 2010, Plaintiff Dumas's cardiac condition required the placement of a stent, and in March of 2010, required bypass surgery. On March 11, 2010, Plaintiff Dumas was placed on leave under the Family Medical Leave Act (FMLA). His FMLA leave expired May 28, 2010, and his employment was thereafter terminated. The Plaintiffs all had good work and safety evaluations and worked overtime without accommodations prior to having their employment terminated.

Each Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) and in each case the District Director for the Minneapolis Area Office of the EEOC concluded that each Plaintiff was discriminated against in violation of the ADA by being discriminated against based on his disability. The District Director also concluded that the requirement to obtain a DOT certification was a violation of the ADA. Informal methods of conciliation offered by EEOC were not utilized, each Plaintiff received his right to sue letter from the U.S. Department of Justice, and Plaintiffs timely commenced individual actions which were then consolidated.

## DISCUSSION

*General Principles of Summary Judgment*

Summary judgment shall be entered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine dispute as to any material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. Summary judgment is not disfavored and is designed for every action. Therefore, there is no "discrimination case exception" to the application of summary judgment, which is in all cases a useful pretrial tool to determine whether any case merits a trial. *Torgerson v. City of Rochester*, 643 F.3d

1031, 1043 (8th Cir.2011).

I

WHETHER PLAINTIFFS ARE PRECLUDED FROM PRESENTING THEIR ADA
CLAIMS FOR FAILURE TO DEMONSTRATE THAT THEY HAVE A PHYSICAL
OR MENTAL IMPAIRMENT THAT SUBSTANTIALLY LIMITS
ONE OR MORE OF THE MAJOR LIFE ACTIVITIES?

Plaintiff Nichols was diagnosed with type 2 diabetes in 2002, was prescribed oral medication for the diabetes, and has a heart condition. Plaintiff Robertson was diagnosed with diabetes in 1999, began taking insulin for the diabetes in 2002, and was also diagnosed with sleep apnea problems. Plaintiff Dumas has a history of coronary artery disease, required stent placement in January of 2010 and required coronary artery bypass graft surgery in March of 2010. Defendants rely on case law handed down before the ADA was amended to contend that Plaintiffs have failed to establish that they have a "physical or mental impairment that substantially limits one or more of the major life activities."*See Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 801-802 (8th Cir. 2006) ("The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working.").

The Americans with Disabilities Act Amendments Act (ADAAA), which was passed in 2008, explicitly rejects several Supreme Court decisions that defined "disability" more narrowly than many of the ADA's original Congressional proponents had intended. *See* H.R.Rep. No. 110-730, at 5 (2008) (H. Comm. on Educ. & Labor), *cited in Rohr v. Salt River Project Agricultural Imp. and Power Dist.*, 555 F.3d 850, 861 (9th Cir.2009). Under the ADAA "disability" is to be broadly construed and coverage is to apply to the "maximum extent" permitted by the ADA and the ADAAA. *Rohr*, 555 F.3d at 861, (citing 122 Stat. at 3553).

42 U.S.C.A. § 12102(1) defines disability as:

>  (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

>  (B) a record of such an impairment; or

>  (C) being regarded as having such an impairment [...].

4

42 U.S.C.A. § 12102(4) provides the following rules of construction for determining a disability under the ADA:

> (A) The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.
> (B) The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.
> (C) An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.
> (D) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.
> (E)(i) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as--
> (I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;
> (II) use of assistive technology;
> (III) reasonable accommodations or auxiliary aids or services; or
> (IV) learned behavioral or adaptive neurological modifications.
> (ii) The ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.
>
> . . . .

The ADAA broadened the definition of disability. There are genuine issues of material fact as to whether each Plaintiff has an a impairment which substantially limits a major life activity, without considering the ameliorative effects of medication. In addition, the Eighth Circuit, in the context of a claim challenging the gathering or disclosure of medical information has stated a plaintiff need not be disabled to state such a claim. *See Cossette v. Minnesota Power & Light*, 188 F.3d 964, 969-970 (8th Cir. 1999). As the Eighth Circuit explained, "It makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." *Cosette,* 188 F.3d at 969 (quoting *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir.1997)); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). In consideration of the ADAA's broad definition of disability and the position of the Eighth Circuit in *Cosette*, the Court concludes that the plaintiffs may bring this action under the ADA.

5

II.

## WHETHER PLAINTIFFS NICHOLS' AND ROBERTSON'S DISABILITY BENEFIT CLAIMS BAR THEIR ADA CLAIMS.?

Defendant cites *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), in support of its position that Plaintiffs Nichols' and Robertson's disability benefit claims bar their ADA claims. This case, however, entitles an employee to an opportunity to explain any discrepancy between his pursuit of disability benefits and his claim in the ADA action that he could perform the essential functions of his job. The Supreme Court in *Cleveland v. Policy Management Systems Corp.*, specifically declined to "apply a special legal presumption permitting someone who has applied for, or received, SSDI benefits to bring an ADA suit only in 'some limited and highly unusual set of circumstances.'" 526 U.S. at 805.

Plaintiff Nichols explained in his affidavit that he applied for and received disability benefits from the South Dakota Retirement System (SDRS) because the City of Mitchell terminated his employment. Nichols contended he would have continued to work as a Palace Transit bus driver if his employment had not been, in his opinion, wrongfully terminated. Nichols also stated that City employee Terri Bertness recommended that he apply for the disability benefits.

Plaintiff Robertson explained in his affidavit that he applied for and received disability benefits because the City of Mitchell terminated his employment on the basis of a medical exam that he does not believe applies to him. Plaintiff Robertson explained in his affidavit that he had always heard that when one applies for disability, one usually gets turned down for several years, so he thought he should apply right away. Plaintiff Robertson further explained that he applied for disability benefits because he no longer had the income he needed from his position with Palace Transit.

These explanations from Plaintiffs Nichols and Roberts are sufficient to avoid summary judgment on the basis of these Plaintiffs requesting and receiving disability benefits and also contending they are qualified individuals in their ADA cases.

III.

## WHETHER THE PHYSICAL EXAMINATION EMPLOYING THE PHYSICAL REQUIREMENTS OF PART 391.41 IS PREEMPTED BY STATE LAW AND PROHIBITED BY THE ADA?

*Preemption*

S.D.C.L § 49-28A-3(3) provides: "Intrastate drivers are exempt from the physical requirements of part 391.41." 49 C.F.R. § 391.41 governs the physical requirements for interstate drivers of commercial vehicles. Part 391.41(b)(3) prohibits an interstate driver from being physically qualified to drive a commercial motor vehicle if he has an "established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control." Part 391.41(b)(4) prohibits an interstate driver from being physically qualified to drive a commercial motor vehicle if he has a "current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure." Part 391.41(b)(10) prohibits an interstate driver from being physically qualified to drive a commercial motor vehicle if he does not possess distant "visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70° in the horizontal Meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green, and amber."

Plaintiffs argue that based on S.D.C.L § 49-28A-3(3), the City of Mitchell was preempted from requiring a physical examination that imposed the requirements of 49 C.F.R. § 391.4. The City maintains, however, that the State has not occupied the field, so that the City's policy, which applies the DOT standards to intrastate drivers, does not conflict with the State law.

A local ordinance may conflict with state law in several ways. In the event of such a conflict, state law preempts or abrogates the conflicting local law. *Rantapaa v. Black Hills Chair Lift Co.*, 633 N.W.2d 196, 203 (S.D. 2001). First, an ordinance which prohibits an act which is forbidden by state law is void to the extent it duplicates state law. Second, a conflict may exist between state law and an ordinance when one prohibits what the other allows. *Snow Land, Inc. v. City of Brookings*,

7

282 N.W.2d 607, 608 (S.D.1979). Third, state law may wholly occupy a particular field to the exclusion of any local regulation. *See Law v. City of Sioux Falls*, 804 N.W.2d 428 (S.D. 2011). This case presents the second type of conflict. The South Dakota Supreme Court has explained, "A conflict arises between an ordinance and a statute only when their express or implied terms are irreconcilable, where the ordinance permits that which the statute forbids, or where the ordinance forbids that which the statute expressly permits." *Snow Land, Inc. v. City of Brookings*, 282 N.W.2d at 608. By exempting intrastate drivers from the physical requirements of 49 C.F.R. § 391.41, the State Legislature prohibited what the City of Mitchell permitted and, in fact, required. Defendant's policy is therefore preempted by State law.

*ADA Prohibitions on Medical Examinations and Inquiries*

42 U.S.C. § 12112(d)(4)(A) provides:[2]

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

In *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007), the Eighth Circuit recognized that the employer who requires a medical examination bears the burden to establish that "business necessity" is vital to the business and that the request for the medical examination "is no broader or more intrusive than necessary." At the time they were required to take the DOT physical examination, the Plaintiffs were intrastate drivers. Since S.D.C.L § 49-28A-3(3) exempted intrastate drivers from the physical requirements of 49 C.F.R. § 391.41 the request for the DOT medical examination was, as a matter of law, broader and more intrusive than necessary.

In *Millage v. City of Sioux City*, 258 F.Supp.2d 976 (N.D. Iowa 2003), a city bus driver brought an ADA action against the city, based on the city placing him on a leave of absence because

---

[2]42 U.S.C. § 12112(d)(4)(B) allows for "voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions."

he was an insulin-dependent diabetic. The City of Sioux City adopted the Federal Motor Carrier Safety Standards, and the local transit union accepted them as part of the contract for the bus driver position. The plaintiff in *Millage* was unable to meet these standards because he was an insulin-dependent diabetic with arguably poor control over his diabetes. 258 F.Supp.2d at 986.

The district court in *Millage* determined that whether or not a claimant under the ADA can perform the essential functions of a particular job must be based upon an "individualized assessment" of his or her ability to perform the job safely, rather than be based simply on a blanket exclusion set forth in the Federal Motor Carrier Safety Standards. 258 F.Supp.2d at 992 (citing *Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir.2002)). In the case at hand,[3] to the extent that the DOT physical examination relies on blanket exclusions set forth in 49 C.F.R. § 391.41, there was no individualized assessment of each plaintiff's ability to perform the job safely. Accordingly, there was a violation of the ADA by the City of Mitchell by requiring Department of Transportation certification for its intrastate drivers and summary judgment will be granted for each Plaintiff on the third claimed cause of action for requiring Department of Transportation Federal Motor Carrier Safety Administration testing for the intrastate drivers.

*Impact on Trial of Summary Judgment Ruling on Third Cause of Action*

Even though the application of the physical requirements of 49 C.F.R. § 391.41 was precluded by the South Dakota Legislature, the DOT exam itself can be administered by a physician in those instances when an employee can properly be required to take a physical examination during the course of his employment, but the determination then made must be an individualized assessment as to whether the employee can still do the job, and not a categorical determination, for example, that if you use insulin you are automatically discharged.

With regard to an employee being required to have an examination during the course of his employment, the employer must show that "'there must be significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job.'"

---

[3]Plaintiff Robertson failed the DOT examination because his was insulin dependent. Plaintiff Nichols was disqualified based upon the DOT examination's peripheral vision requirements. Nichols then passed the peripheral vision examination administered by Dr. Martin. Plaintiff Dumas originally passed the DOT examination but was not qualified to return to work pursuant to the DOT standards after undergoing heart procedures.

*Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ( quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir.1999)) (An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there must be genuine reason to doubt whether that employee can "perform job-related functions."). As the Eighth Circuit further explained in *Thomas v. Corwin*:

> "[C]ourts will readily find a business necessity if an employer can demonstrate ... a medical examination or inquiry is necessary to determine ... whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties (such as frequent absences ...)," or "whether an employee's absence or request for an absence is due to legitimate medical reasons, when the employer has reason to suspect abuse of an attendance policy." [*Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97-98 (2d Cir.2003)].

483 F.3d at 527. Employers are permitted "to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims." *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir.1998), Fitness-for-duty exams are considered a reasonable means of making such a determination. *See Wisbey v. City of Lincoln*, 612 F.3d 667, 673 (8th Cir. 2010), *abrogated on other grounds in Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir.2011). It has been recognized, however, that where an employer develops a suspicion regarding the employee's health, but has no justified concern about employee's ability to perform her job, the ADA prevents the employer from requiring the employee to submit to a medical examination." *Rodriguez v. Loctite Puerto Rico, Inc.* 967 F.Supp. 653, 661 (D.Puerto Rico 1997).

There are genuine issues of material fact regarding whether the medical examinations were job-related and consistent with business necessity. Defendant has submitted evidence that the City was told by an examining physician at Queen of Peace Hospital that an applicant was not medically fit to drive because of a condition that a supervisor knew another driver had. There is also evidence that the City adopted the new policy and requested the examinations because they wanted more standardized and consistent testing. Plaintiff Nichols stated in his affidavit that he mentioned his heart condition to a City dispatcher briefly, but did not go into detail. There is also evidence in the record that Nichols' employer knew he had trouble affording diabetes testing strips. Plaintiff Robertson stated in his affidavit that he had a hypoglycemic episode while at work in October of 2007, at the end of his shift when the bus he was driving was empty, and contacted his dispatcher to drive the bus back

to the barn. The City was obviously aware of Plaintiff Dumas's heart procedures that were required after he passed his March 13, 2009 physical examination. In addition there is also evidence that the Plaintiffs had good work and safety evaluations and had no problems performing their work duties competently and safely for a significant period of time before they were required to take the DOT examinations. The jury will determine with regard to each Plaintiff whether there existed "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job.'"

If business necessity is shown then an employer must also show that the medical examination or inquiry is no more intrusive than necessary. *Thomas v. Corwin*, 483 F.3d at 527. It is the employer's burden.   If as to these three Plaintiffs the employer fails on the above proof, then the subsequent information gathered after the requested examination could not be used as the basis for the discharge of that particular Plaintiff.  In addition, there would be an ADA violation for relying on a prohibited medical examination, this ADA violation being set forth in Count 4 of each Complaint. The jury will receive special interrogatories to ensure that the information gathered from the requested examinations and subsequent discovery is not considered unless and until the jury determines business necessity.

## IV
## WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' WRONGFUL DISCHARGE AND FAILURE TO ACCOMMODATE CAUSES OF ACTION?

Under the ADA  it is unlawful for an employer to discriminate against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "Discrimination" is defined to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case of discrimination under the ADA, an employee must show that he (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment decision because of the disability. *Huber v. Wal–Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007). To be a qualified individual under the ADA, an employee must "(1) possess the requisite skill, education, experience, and training for his position; and (2) be able to perform the essential job

functions, with or without reasonable accommodation." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir.2003) (internal quotation omitted).

The scope of reasonable accommodation under the ADA includes: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B), *quoted in Huber v. Wal–Mart Stores, Inc.*, 486 F.3d at 482. If, however, there is sufficient evidence that the discharge was not because of disability but rather because of failure to monitor or control a medical disability, then there will be no accommodation question for the jury to decide. *See Burroughs v. City of Springfield*, 163 F.3d 505, 507-508 (8th Cir. 1999) (patrol officer who twice suffered diabetic reactions while on duty which rendered him unable to function on the job, and who admitted that the episodes resulted from changes in his eating schedule, which was within his control, "failed to state a claim under the ADA because he was capable of performing the job without accommodation, yet he failed on two occasions to keep himself functional and alert on the job").

Defendant maintains that it is entitled to summary judgment on Plaintiffs' ADA wrongful discharge and failure to accommodate claims (1) because its medical examination policy is not unlawful and is characterized by every expert as setting forth an appropriate, reasonable standard; (2) because the Plaintiffs were not "qualified individuals" under the ADA; and (3) because no reasonable accommodation exists for these Plaintiffs. As was previously discussed, a DOT examination itself could be administered by a physician in appropriate instances, but the ADA requires an individualized assessment as to whether the employee is qualified to safely perform his job, and not a blanket exclusion based on the physical requirements of 49 C.F.R. § 391.41.

Defendants maintain that Plaintiffs cannot prove they were qualified individuals who could perform the essential functions of their jobs, with or without reasonable accommodations, because they cannot meet the ADA requirement that they not pose a direct threat to the health or safety of others. 42 U.S.C. § 12111 (3) defines "direct threat" as a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." An employer bears the burden of proof on the ADA defense that the employee would pose a direct threat to the health or safety of other

individuals in the workplace, as the direct threat defense is considered an affirmative defense. *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007). The Eighth Circuit has described the requirements of establishing a direct threat as follows:

> The Supreme Court requires an individualized direct threat analysis that relies on the "best current medical or other objective evidence" in order to "protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear." *Nunes*, 164 F.3d at 1248 (citing *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Sch. Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). "Specific factors to be considered include (1) the duration of risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm." *Id.*

In attempting to establish the direct threat defense, Defendant relies on substantial medical testimony regarding the significance of the failure of all the Plaintiffs to meet DOT standards and the impact of Plaintiffs Nichols and Robertson's reported noncompliance in monitoring and controlling their medical conditions. The Plaintiffs, however, have presented evidence that they are managing their conditions, that they had good work and safety records, and that they have passed less stringent physical examinations. All three Plaintiffs hold Commercial Driver's Licenses with passenger endorsements from the State of South Dakota. Genuine issues of material fact exist, therefore, with regard to the direct threat defense.

With regard to providing a reasonable accommodation, all of the Plaintiffs have submitted evidence that they had and could be qualified individuals if there were appropriate adjustment or modification of the examination required by the City's policy. These adjustments and modification would provide that the physical examination conform to State law and and not impose blanket exclusions based on the physical requirements of 49 C.F.R. § 391.41. Robertson has presented evidence that by allowing drivers with diabetes to eat on the bus in order to maintain proper blood sugar levels, a practice which was not allowed by his supervisor, he could maintain his blood sugar. Plaintiff Dumas has presented evidence that could have been accommodated by following the recommendations of his treating physician and cardiologist rather than adhering solely on the federal DOT standards. In addition, there is evidence that weight lifting requirements for Dumas could have been modified without interfering with his ability to perform essential job functions.

Genuine issues of material fact exist with regard to ADA wrongful discharge and failure to

accommodate claims and the direct threat affirmative defense. Accordingly, Counts 1 and 2 will go to trial.

# V
## WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF DUMAS'S FMLA CAUSE OF ACTION?

Plaintiff Dumas also has a claim for a violation of the Family Medical Leave Act (FMLA) in the Sixth Cause of Action in his Complaint. On January 25, 2010, Dumas's physician approved his return to work after Dumas's January 21, 2010 heart stent surgery. Dumas returned to work, but was then sent home because the City maintained that DOT medical regulationa required him to take off 60 days. In March of 2010 Dumas experienced chest pain which required leave from work for additional heart surgery. Plaintiff's heart surgeon cleared him to return to work in mid-May 2010, with a restriction of lifting no more than 50 pounds for two weeks. Dumas contends he did not request and did not want 57 days of leave for the January 2010 heart surgery, but the City required that he take leave under a federal regulation. When Dumas informed the City that he was able to return to work and perform the functions of his job in mid-May 2010, the City refused to reinstate him to any position. Based on his physician's order Dumas could have returned with a two-week, slightly reduced lifting restriction starting May 4, 2010. Under his doctor's order he could have returned to work as a Palace Transit bus driver without any restrictions on May 18, 2010. A North Central Heart Institute document submitted by Dumas's cardiovascular/thoracic surgeon on May 4, 2010, states that Dumas could work with a restriction of lifting no more than 50 pounds for two weeks. Dumas's cardiovascular/thoracic surgeon on May 4, 2010, wrote to Dumas's physician, Dr. Margallo, and stated:

> I had the pleasure of seeing Curtis Dumas in clinic today. I did a coronary artery bypass grafting of two vessels on him on March 19, 2010. Today in clinic he looks excellent. His sternum is stable and I think it is time for him to go back to work. I am going to write him for a slightly reduced lifting restriction for another two weeks, but I think he can be back to full activity soon.

While Dumas was on FMLA leave after his bypass he was physically able to do and did landscaping around his house, and lifted heavy buckets of rocks, and hand-mixed and poured concrete

for a new sidewalk to his garage, without experiencing angina or any other heart problem. Dumas also visited the job site many times while he was on FMLA leave, and was told by his supervisors that they were holding his job open for him and looking forward to his return on June 19, 2010, the date the City had determined to be his return date. The City then determined that Dumas's FMLA benefits ran out on May 28, 2010, and terminated him on or about June 1, 2010, in a termination letter which states that the Defendant terminated Dumas's employment because his FMLA time allotment expired on May 28, 2010. Dumas contends that if he had not been forced to take the 60 days in January, he would have been entitled to FMLA leave until June 12, 2010, and would not have been terminated because his FMLA benefits had run out.

The FMLA entitles an employee to twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements. 29 U.S.C. § 2612(a)(1). The City does not dispute that Dumas meets those requirements. 29 U.S.C. § 2615(a)(1) makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights provided under the FMLA. It is also unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). Dumas raises an FMLA interference claim based on a theory of involuntary leave. Other districts in this Circuit have recognized that an employer may interfere with an employee's right to FMLA leave by forcing the employee to take leave that the employee did not request or need. *See Hearst v. Progressive Foam Technologies, Inc.*, 682 F.Supp.2d 955, 967 (E.D.Ark. 2010); *Heyne v. HGI-Lakeside, Inc.*, 589 F.Supp.2d 1119, 1128 n.13 (S.D. Iowa 2008). To establish such a claim "requires an employee to have been forced to take FMLA leave even though the employee does not have a 'serious health condition' that precludes him from working."*Hearst v. Progressive Foam Technologies, Inc.*, 682 F.Supp.2d at 967.

The Eight Circuit has held that the FMLA has no requirement that an employer reasonably accommodate employees who cannot perform the essential functions of their respective positions, and that the duty to accommodate is governed solely by the ADA. *See Battle v. United Parcel Serv., Inc.*, 483 F.3d 856, 865 (8th Cir. 2006). However, Dumas has presented genuine issues of material fact as

15

to whether lifting 100 pounds is an essential function of his job and as to whether he was prejudiced[4] by the forced leave when his treating physician said Dumas could return to work with no restrictions on May 18, 2010, that date being before his FMLA leave would expire. Accordingly, Defendants' motion for summary judgment is denied as to Dumas's FMLA claim.

## VI
## WHETHER THE OPINIONS OF DOCTORS MEYER, WICKERSHAM, AND MARGALLO SHOULD BE PRECLUDED UNDER THE *DAUBERT* STANDARDS?

Defendant contends that the issue of whether Plaintiffs were fit to drive under the FMCSA DOT standards is the central issue in this case, and that Drs. Meyer, Wickersham, and Margallo have little or no knowledge regarding the DOT standards. Defendant then asserts that this Court exercise its gatekeeping function and prohibit these doctors from offering expert opinions as to the effect of Plaintiffs' medical conditions on their ability to drive. For the reasons set forth in this opinion, the Court does not adopt the Defendant's characterization of the central issue in this case, and will not require expertise on the FMCSA DOT standards in order for the doctors in issue to express opinions related to the Plaintiffs' abilities to safely perform the essential functions of their jobs.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court has a gatekeeping role in evaluating whether proffered expert testimony meets the

---

[4]An employee's claim for involunry leave typically ripens only when and if that employee seeks leave at a later date and the leave is not available because the employee was wrongfully forced to use leave earlier. See *Hearst v. Progressive Foam Technologies, Inc.*, 682 F.Supp.2d at 967-968. In the case at hand the claim ripened at the time Dumas was terminated due to the exhaustion of his FMLA leave.

standard of Rule 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597–98 (1993). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir.1988). It is "only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury" must such testimony be excluded. *Loudermill*, 863 F.2d at 570. Accordingly, doubts regarding the usefulness of an expert's testimony should be resolved in favor of admissibility. *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir.2011). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6265 (1997).

All three physician witnesses were treating physicians of one or more of the Plaintiffs and are fact witnesses in this case. Dr. Margallo, who is licensed in internal medicine commonly treats patients with diabetes in his practice. Dr. Margallo treated Plaintiff Robertson and reviewed and reviewed the July 2000 job description for Palace Transit bus drivers. Dr. Margallo also has experience treating people with cardiovascular disease and treated Plaintiff Dumas beginning in August of 1999. Dr. Margallo reviewed the FMCSA Medical Examination Report Instructions to the Medical Examiner for performing DOT medical examinations and reviewed cardiology records concerning Dumas. Any opinion Dr. Margallo has on the relevant issues in this case are based on his education, training and experience as a physician, and his experience in treating Dumas and Robertson, and is qualified to give an expert opinion on the relevant issues in their cases.

Dr. Meyer is a licensed physician who specializes in cardiovascular/thoracic surgery and operated on Curtis Dumas on March 19, 2010. He is licensed in the State of South Dakota and certified by the American Board of General Surgery and the American Board of Thoracic Surgery. Dr. Meyer has the requisite medical education, expertise, training and experience to render an opinion on the relevant issues concerning Plaintiff Dumas.

Dr. Wickersham specializes in family medicine and is certified by the American Board of Family Medicine. He has treated Plaintiff Nichols for diabetes and chest pain, reviewed his treatment records, and reviewed the Palace Transit July 2000 job description. Dr. Wickersham has the requisite education, training and experience as a physician to render an opinion on the relevant issues

17

concerning Plaintiff Nichols. All three physicians can assist the jury in this case. Any deficiencies these three physicians have in their knowledge of the specifics of the FMCSA DOT standards does not exclude their testifying as experts in this trial.

Accordingly,

IT IS ORDERED:

1. That pursuant to Fed. R. Civ. P. 56(f), summary judgment is granted to the Plaintiffs on the third cause of action in their Complaints.

2. That Defendant's motion for summary judgment is an all respects denied, except for the Court having previously entered summary judgment against the Plaintiffs on their age discrimination claims;

2. That Defendant's request for the Court to exclude expert opinions of the Plaintiffs' physician witness is denied.

Dated this 9th day of November, 2012.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Summer Wahuh____
DEPUTY